May Term, 1858.

STEPHENSON v. CORNELL.

---

STEPHENSON *v.* CORNELL.

It is decided in this case, that the parties to the agreement recited in the opinion were, upon the evidence referred to, to be regarded, as to the public, as partners.

APPEAL from the *Tippecanoe* Court of Common Pleas.

*Per Curiam.*—Suit by *Walter Cornell* against *Evan Stephenson*, to recover the value of a yoke of oxen alleged to have been wrongfully taken by the latter from the former person. Answer in general denial. Trial, and judgment for the plaintiff. Motion for a new trial, &c.

Tuesday, June 22.

It appears that on the 14th day of *July*, 1853, *Jesse Stingley* and *Evan Stephenson* entered into an agreement as follows:

" This witnesses that we, *Jesse Stingley* of *Tippecanoe* county, *Indiana*, and *Evan Stephenson* of *Scott* county, *Kentucky*, have this day entered into a co-partnership for one year from this date, to-wit, for 12 months from *July* 14, 1853, to *July* 14, 1854, upon the following terms, to-wit: The said *Jesse Stingley* is to move his family into the house upon *E. Stephenson's* farm on *Big Pine*, now occupied by *Ab't Jackson*, by the 1st of *October* next, and from this date (*July* 14th) the said *Stingley* takes charge of all said *Stephenson's* interest upon said farm, viz., 114 head of feeding cattle, valued at about $31.97 cents a head; 1 yoke of oxen which cost $102.60 cents; 1 do. cost $80; 1 pair mules cost $250 (left simply in care of said *Stingley*); about 40 head of hogs, sows and pigs, valued at $90; all said *Ste-*

*phenson's* rent corn (amount not known exactly), and all the corn said *Stephenson* has bought of *Dawley, Jackson,* and *Mosgrove*—say about 120 acres; said *Stephenson's* interest in oats and hay or grass, which cost 120 dollars; hay rake $8, &c. &c., too tedious to mention; 1 old gray, mealy mare; 1 fine roan mare; 1 fine gray-eagle mare and colt; 1 gray horse, 3 years old; 1 gray yearling; 1 bay mare; 1 bay horse, &c. &c. Said *Stingley,* in the absence of said *Stephenson,* agrees to manage, take care of, and see to, said farm and stock, preserving the timber from waste, and keeping the stock, (as far as in his power lies,) from loss and straying—feeding, cherishing and fattening the same. Said *Stingley* and said *Stephenson* enter into partnership on these principles, to-wit: The partnership is charged with interest at 6 per cent. on the capital invested in cattle and hogs (*Stephenson's* horses excepted, said horses not coming into the partnership). The partnership is charged with all expenses needful to keep the farm in repair, to the advantage of stock, but not with buildings and new fences, and such like. *Stephenson* furnishes the capital and *Stingley* is to keep the farm in repair, and fix and arrange and superintend all improvements desired and provided for by said *Stephenson,* and to have them made in reasonable time, and at the smallest possible expense; and after capital, interest, and expenses are taken out (upon sale of stock) said *Stingley* is to have one-third of all the clear profits, and *Stephenson* two-thirds of the same. *Stingley* enters forthwith upon the discharge of his obligations, and promises to push forward and complete (if possible) the fencing of the large pasture-field on said farm by the 1st of *August,* and to have everything done after the most farmer-like fashion; to employ, at expense of partnership, a force to cut as much wild grass, and stack and salt the same, as he can possibly get put up on and against to the farm. It is understood that no geese are to be allowed to run or subsist on said farm. About 45 acres of the land—say the 30 acres tended by *Jones* this year, and 15 acres adjoining—are to be put in oats next spring, and sown down in timothy and clover at expense of partnership. It is distinctly under-

derstood that *Stephenson* is entitled to two-thirds of the entire profits on all the rents, and on all profits on stock, grain sold, and everything. For breaking fresh land that has never been broke, the partnership furnishes the team and break-plow; but *Stephenson*, individually, pays for the services of the hand breaking. Partnership pays for breaking any lands that were once broke, but are now foul. *Stingley* pays all hands and board of same, for services of same in tending crop on lands that are now already broke. *Stingley* makes no charge against *Stephenson* and his friends for board when on the farm. *Stephenson* allows said *Stingley* to keep 4 or even more horses upon said farm free of expense to said *Stingley*, provided said horses are devoted exclusively to the services of the farm. All and every description of produce raised on the farm by *Stingley* comes into the partnership, interest to be divided as above. *Stingley* keeps 5 or 6 cows free of cost, but their calves, when weaned, come into the partnership at a fair valuation. All the hogs *Stingley* brings to the farm are to come into the partnership at a fair valuation. *Stingley* is allowed to keep 20 sheep free of cost this summer, but to pay for their wintering. *Dawley* and *Mosgrove* are to remain on the farm from 1st of *March*, 1854, for one year if they wish to. If said *Stephenson* wishes to bring blooded stock of any description upon the farm, the costs and expenses are to be remembered and put on book, and profits divided as on other stock. If the parties differ on any point, &c., they are to choose," &c.

While in possession, under the foregoing agreement, *Stingley* sold a yoke of oxen furnished to the farm by *Stephenson*, to one *Lowry*, who subsequently sold them to one *Orion Stingley*, who sold them to the plaintiff. While they were in plaintiff's possession under his purchase, *Stephenson* seized and took them away, and converted them to his own use, denying that *Jesse Stingley* had any property in, or right to dispose of, any stock upon the farm, by virtue of his connection in business with said *Stephenson* under the agreement copied.

To what extent the written instrument constituted the

May Term, 1858.

parties to it partners *inter se*, it is not necessary we should decide.

There was some evidence tending to show that *Stephenson* and *Stingley* held themselves out to the public as partners, and that *Stingley* sold stock.

Under the circumstances of the case, we think, as to the public, *Stingley* must be regarded as a partner, with power to bind his co-partner by the sale of the oxen.

The judgment is affirmed with 5 per cent. damages and costs.

*W. C. Wilson, G. S. Orth* and *J. A. Stein*, for the appellant.

*S. W. Telford* and *T. Dame*, for the appellee.